IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DIANE COATS,<br>     Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN,<br>Acting Commissioner of Social Security,<br>     Defendant. | §<br>§<br>§<br>§   Civil Action No. 3:12-CV-4968-M-BK<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Judge's order of referral, the undersigned Magistrate Judge now considers Plaintiff's *Motion for Summary Judgment* (Doc. 17) and Defendant's *Motion for Summary Judgment* (Doc. 19). For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* be **DENIED**, Defendant's *Motion for Summary Judgment* be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

## I.   BACKGROUND[1]

### A.   Procedural History

Plaintiff seeks judicial review of a final decision by Defendant denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). In May 2010, Plaintiff filed for DIB, claiming that she became disabled in April 2007. (Tr. 100–104). Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). (Tr. 1–3, 13–22, 50–53).

### B.   Factual Background

At the time of her alleged onset of disability, Plaintiff was 55 years old and was an

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr" and followed by the stamped page number(s).

1

unemployed high school graduate. (Tr. at 31). She last worked as a medical assistant in 2003. (Tr. at 32, 42). Though there was no specific event that brought about the onset of her disability, Plaintiff had previously been diagnosed with type II diabetes and treated for hypertension, (Tr. at 254, 256, 260, 262, 265), and was experiencing issues with depression and anxiety, (Tr. at 32–33). In September 2007, Dr. Jelena Bucan-Kurepa assessed Plaintiff as suffering from diabetic neuropathy, decreased light touch sensation in her feet, type II diabetes, hypercholesterolemia, and benign hypertension, and prescribed medicine accordingly. (Tr. at 186–87). On return visits throughout 2008, Plaintiff was further treated by Dr. Bucan-Kurepa and Dr. Najam Khan for hyperlipidemia, acute pharyngitis, abnormal weight gain, depression, shortness of breath, headache, and menopausal symptoms. (Tr. at 188–94).

In August 2009, Dr. Lee Wallace reviewed the medical evidence for the time period preceding December 31, 2008, Plaintiff's date last insured, and concluded that, while Plaintiff's anxiety was a medically-determinable impairment, there was insufficient evidence to determine Plaintiff's functional limitations. (Tr. at 202–15). In July 2010, Dr. Mark Boulos reviewed the same evidence and came to the same conclusion, though he did not find Plaintiff's anxiety to be a medically determinable impairment. (Tr. at 339–52).

Plaintiff was treated by Dr. Jay Teng from July 2010 through at least March 2011. (Tr. at 252, 388–89). In April 2011, Dr. Teng completed an RFC questionnaire on Plaintiff. (Tr. at 393–97). He noted Plaintiff's diabetes, hypertension, depression, foot pain, and neuropathy, and listed her prognosis as "fair." (Tr. at 394). He also listed her general symptoms as "dizziness, earache, and neuropathic pain." *Id.* Dr. Teng opined that Plaintiff is not a malingerer and that her symptoms were frequently severe enough to interfere with the attention and concentration needed to perform simple work tasks. (Tr. at 395). He additionally found Plaintiff was capable

of performing low-stress jobs with various strength and postural limitations. (Tr. at 395–96). Lastly, Dr. Teng estimated that Plaintiff would miss about four days of work per month due to her multiple impairments. (Tr. at 397).

### C. Administrative Hearing

At the May 2011 administrative hearing, Plaintiff testified about her foot pain issues, depression, anxiety, fatigue, panic attacks, and diabetes. (Tr. at 32–34). She informed the ALJ that she was terminated as a medical assistant because she could not walk that fast, remember to do things, or otherwise keep up. (Tr. at 33, 36). Plaintiff stated that during her panic attacks, she would have shortness of breath and rapid heartbeat, and would hyperventilate. (Tr. at 37). She also testified that, when faced with criticism, she would "have temper [sic]," "blare out," and become quiet, secluding herself in her room for over an hour. (Tr. at 39).

### D. The ALJ's Findings

In September 2011, the ALJ issued an unfavorable decision. (Tr. at 13–22). At step one, he found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date through December 31, 2008, her date last insured. (Tr. at 15). At step two, the ALJ found that Plaintiff's type II diabetes was a "severe" impairment, and that Plaintiff's generalized anxiety disorder was a "non-medically determinable" impairment. *Id.* The ALJ pointed to the state agency consultant reports of Dr. Wallace and Dr. Boulos as supporting evidence, and discounted the reports of Dr. Bucan-Kurepa and Dr. Khan because they appeared to rest "at least in part on an assessment of an impairment outside the doctor[s'] area[s] of expertise," and failed to include "the type of clinical and objective findings one would expect for a person diagnosed with generalized anxiety disorder." (Tr. at 16–17). At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the presumptively disabling conditions listed

in 20 C.F.R. Part 404, Appendix 1. (Tr. at 17). Next, the ALJ found that Plaintiff had the RFC to perform a full range of "medium" work. *See id*. At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as actually performed and that her work as a medical assistant did not require the performance of activities precluded by her RFC. (Tr. at 21).

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920 (b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  DISCUSSION

Plaintiff's objections center on the ALJ's findings and conclusions related to her anxiety disorder. She contends that the record lacked substantial evidence because it did not contain a medical source statement regarding the functional limitations caused by her mental impairment. (Doc. 18 at 11–16). In particular, Plaintiff alleges that the statements from Dr. Wallace and Dr. Boulos do not qualify as medical source statements because they have conflicting opinions regarding the severity of Plaintiff's anxiety which the ALJ did not adequately resolve. (Doc. 18 at 12–13). Further, Plaintiff argues that the ALJ's RFC determination was made without useful medical source statements, and thus constitutes a lay opinion that is not supported by substantial evidence. (Doc. 18 at 13–14). Plaintiff also takes issue with the ALJ's conclusions, contending they did not account for the RFC questionnaire by Dr. Teng, which "specifically addressed

functional limitations." (Doc. 18 at 15–16). Ultimately, Plaintiff contends that Dr. Teng's opinion confirms that her anxiety was a medically-determinable impairment, a conclusion that contradicts the ALJ's assessment. *Id*.

Defendant responds that the ALJ's thorough analysis of Plaintiff's symptoms is based on substantial evidence. (Doc. 19-1 at 4–6). With regard to the conflict between Dr. Wallace and Dr. Boulos, Defendant argues that the statements are in fact consistent because they both take note of Plaintiff's anxiety disorder diagnosis but find insufficient evidence to assess any resulting limitations on Plaintiff. (Doc. 19-1 at 5). Defendant also contends that the ALJ's RFC determination is not a lay opinion and is supported by substantial evidence that Plaintiff's anxiety was not disabling -- including medical evidence other than the statements of Dr. Wallace and Dr. Boulos. (Doc. 19-1 at 5–6).

Plaintiff replies that, in the face of the insufficient findings of Dr. Wallace and Dr. Boulos, the ALJ should have requested a medical source statement describing the work that Plaintiff was still capable of performing. (Doc. 20 at 3). Plaintiff also complains that, without explanation, the ALJ gave "significant weight" to Dr. Boulos' opinion, which did not label Plaintiff's disorder a medically determinable impairment, but not Dr. Wallace's opinion, which did. *Id*. Plaintiff argues that her treatment records are substantial evidence of disability, not the other way around, reiterating that the ALJ formed his own lay opinions in the face of contrary medical evidence. (Doc. 20 at 5).

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 404.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). RFC is the most that a claimant is able to do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). The RFC is

considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 416.920(a)(4). In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p; 20 C.F.R. § 416.923. The final responsibility for deciding a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1).

In this case, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. As an initial matter, much of the medical evidence in the record postdates December 31, 2008, the date Plaintiff was last insured ("DLI"). Evidence showing degeneration of a claimant's condition after the DLI is irrelevant to the ALJ's disability analysis. *Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995); *see also McLendon v. Barnhart*, 184 F. App'x 430, 431 (5th Cir. 2006) (per curiam) ("If a claimant has a degenerative or ongoing impairment, the relevant inquiry is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition."). Here, therefore, the ALJ was not required to consider evidence of disability after the DLI in assessing Plaintiff's disability or determining her RFC during the insured period. *See Boyer-Sneddon v. Astrue*, No. 09-CA-757, 2010 WL 4117013, at *3 (W.D. Tex. Oct. 19, 2010) (drawing the identical conclusion in a similar case). Although the record contains relatively few details about Plaintiff's condition prior to her DLI, the ALJ considered all of them. (Tr. at 15–17).

As to the crux of Plaintiff's argument that, in the absence of medical source statements of Plaintiff's limitations, the ALJ substituted his own lay opinions in determining the RFC, the Court is not persuaded. Even though Dr. Wallace and Dr. Boulos' medical source statements indicate that based on the evidence presented them for review, they were unable to assess Plaintiff's functional limitations, it does not automatically follow that the ALJ based his RFC

determination on his own lay opinions. Both parties cite *Ripley v. Chater,* 67 F.3d 552 (5th Cir. 1995), in support of their positions. *Ripley* places a duty upon the ALJ to develop the facts fully and fairly, which often means the ALJ "should request a medical source statement describing the types of work that the applicant is still capable of performing." *Id*. at 557. However, even where the medical source statements are insufficient, as Plaintiff contends they are here, this Court looks to the record to determine whether substantial evidence supports the ALJ's decision. *Id*.; *see also Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (applying harmless error analysis in the disability benefits context).

      The ALJ is not "playing doctor" by determining which of contradictory medical opinions to credit; that is precisely the type of conflict he is called upon to resolve.[2] *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) ("Conflicts of evidence are for the Commissioner. . . to resolve."). Moreover, contrary to Plaintiff's argument, this is not a case where there is *no* medical source evidence; the medical source opinions already in the record, namely those of Dr. Wallace and Dr. Boulos, simply state that there is a dearth of evidence from which an RFC can be drawn. Plaintiff's suggestion that the conclusions of Dr. Wallace and Dr. Boulos are flawed is belied by the record. Each doctor considered Plaintiff's regular physician visits to address her anxiety. (Tr. at 214, 284–336, 351). However, as Dr. Wallace noted, the evidence of anxiety before Plaintiff's DLI was insufficient evidence to determine if it was disabling during the applicable period, since "there [was] no documented treatment by a mental health professional and no history of psychiatric hospitalization." (Tr. at 214 (medical

---

[2] Plaintiff takes the "playing doctor" phrase directly from *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). [Doc. 18 at 13-14]. That case is inapposite, however. The ALJ in *Frank* drew his own medical conclusions, contrary to the claimant's subjective statements and the weight of "vast" medical evidence. *Id*. at 621-622. Here, however, the ALJ weighed all the evidence, including the medical statements, and merely resolved conflicts in the evidence.

abbreviations replaced)).  The ALJ was not required to have yet another doctor review the same medical evidence in search of a different conclusion.

Furthermore, Plaintiff notes that Dr. Bucan-Kurepa observed her "worried, nervous, and upset" in June 2008 (Tr. at 191), while Defendant notes that Dr. Khan observed her "alert and oriented" with "normal" "mood and judgment" in November 2008 (Tr. at 193).  Considering the relative infrequency of Plaintiff's doctor visits and the conservative treatment of her anxiety, the ALJ's failure to include in the RFC any limitations based on such evidence is not error.  *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 640, 645 (N.D. Tex. 2013) (Means, J.) (upholding the denial of disability benefits where the claimant had received only conservative treatment for her back pain).

Lastly, Plaintiff contends the ALJ should have considered Dr. Teng's questionnaire in his RFC determination.  However, Dr. Teng's opinions were offered after Plaintiff's DLI and do not speak to her condition during the relevant period before Plaintiff's DLI.  As a consequence, contrary to Plaintiff's assertion, the ALJ was not required to explain why he did not adopt Dr. Teng's opinion which conflicts with the ALJ's RFC assessment.  (Doc. 18 at 17 (citing SSR 96-8p, 1996 WL 374184, at *7 (1996)).  A treating physician's opinion "may be assigned little or no weight when good cause is shown." *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000).

Dr. Teng's questionnaire was completed on April 8, 2011, more than two years after Plaintiff's DLI.  (Tr. at 397).  And although he averred that he had been treating Plaintiff for approximately two and a half years (Tr. 394), the evidence does not support this statement.  His name does not appear in medical records until July 2010 — two months after Plaintiff applied for DIB and well after her DLI.  (Tr. 284–336, 336).  Dr. Teng answered the questionnaire completely in the present tense and, notably, he left blank the question asking for the "earliest

9

date that the description of symptoms and limitations in this questionnaire applies." (Tr. at 397). As previously stated, medical evidence that postdates the DLI showing degeneration of a claimant's condition is irrelevant to the ALJ's disability analysis. *Torres*, 48 F.3d at 894 n.12; s*ee also Vail v. Astrue*, No. , 2009 WL 4877121, at *6 (S.D. Tex. Dec. 11, 2009) (noting that the ALJ found the opinion was not supported by medical evidence from the relevant period, which constituted good cause for disregarding the medical opinion).

Finally, it is of no moment that the ALJ did not discuss in his opinion why he did not consider Dr. Teng's questionnaire. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected.").

### IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 17) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 19) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SIGNED** October 11, 2013.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE